RADIC *v.* THOMAS JACKSON & CO.

1. MASTER AND SERVANT—INFANT—MINOR, EMPLOYMENT OF—HAZ-ARDOUS OCCUPATION—DANGEROUS EMPLOYMENT.

On the trial of a personal injury action for the loss of two fingers of a minor under the age of 18 years, in which the proofs showed that plaintiff was employed at the time of his injury in removing pieces of wood from the table of a machine known as a tenoner, and was obliged to stand between rapidly moving belts 'from three to four feet apart, the upper part of which revolved towards the machine, that his hand came in contact with the knives of the machine in some manner that he could not explain, as he turned away from the machine to remove a pile of boards which he had gathered together, there was sufficient evidence of the hazardous nature of his employment to warrant the court in submitting the issue to the jury.

2. SAME—CONTRIBUTORY NEGLIGENCE—DUE CARE.

The question of plaintiff's contributory negligence was also a question of fact.

3. SAME—GUARDING KNIVES—TRIAL.

The court did not err in declining the request of the defendant to charge that no duty devolved upon the master to guard the knives, and in limiting the issue to the negligence relied upon by plaintiff, the instructions advising the jury that all existing conditions were to be considered in determining whether the employment was hazardous.

4. SAME—INSTRUCTIONS.

Defendant's objection to the charge of the court that it permitted the jury to find for plaintiff unless there was absolutely no chance of injury near the place in which plaintiff worked, was untenable where the court instructed the jury at length as to the meaning of hazardous employment as described in Act No. 220, Pub. Acts 1911 (2 How. Stat. [2d Ed.] § 4017), as to the burden resting on plaintiff to show the existence of hazard greater than in ordinary vocations, and where the court charged that he could not recover if he failed to exercise due care, that the fact of his injury did not in itself establish the hazardous nature of the employment, that the

proximity of the pulleys and belts to plaintiff's position was not evidence of negligence unless the jury should find that they were an element of danger and in their location, etc., contributed to the injury.

Error to Saginaw; Kendrick, J. Submitted November 26, 1913. (Docket No. 31.) Decided March 26, 1914.

Case by Louis Radic, by next friend, against Thomas Jackson & Co., Limited, a copartnership association, for personal injuries. Judgment for plaintiff, and defendant brings error. Affirmed.

*Humphrey, Grant & Humphrey,* for appellant.

*Purcell & Travers,* for appellee.

OSTRANDER, J. The declaration contains two counts, upon the second of which the case was submitted to the jury. In that count, two duties which the defendant owed to plaintiff are alleged, one a duty not to engage him in any hazardous employment, the other to cover, guard, and protect the revolving knives upon the machine at which plaintiff was set to work. As to this second allegation of duty and the fact which it assumes, it and the evidence upon the subject introduced at the trial were treated as an element of hazard, and not as establishing a duty and breach of it for which plaintiff was entitled to recover.

Two principal questions were submitted to the jury: *First,* whether plaintiff was employed in a hazardous employment; and, *second,* whether his own negligence caused or contributed to his injury. It is the contention of the defendant that upon neither of these propositions was there any question for the jury, who should have been instructed as a matter of law both that plaintiff was not employed in any hazardous employment and that he had not estab-

lished the fact that his own negligence did not contribute to his injury. It is a further contention of defendant that the undisputed evidence conclusively establishes the contributory negligence of plaintiff.

Two errors are assigned upon the charge of the court as given, which will be considered in their order. Decision of the principal questions involve a careful reading of the testimony given at the trial. The statute (Act No. 220, Pub. Acts 1911, § 11, 2 How. Stat. [2d Ed.] § 4019) provides that no male under the age of 18 years shall be employed in any hazardous employment; the legislature meaning, we assume, an employment which is in fact hazardous. Plaintiff was born December 26, 1895. He was injured March 1, 1912. At the time of his injury he was 4 feet 10 inches in height, weighed 90 pounds, was in sound health, and was physically able to perform the work at which he was set. He had been to school five years, passed the fifth grade, had studied geography, arithmetic, drawing, and other branches. Receiving in September, 1911, a permit to work (section 10, Act No. 285, Pub. Acts 1909, 2 How. Stat. [2d Ed.] § 4018), defendant set him to work upon a machine called the sticker, where he worked for about two months, when he was employed to work upon a machine called a tenoner, which was the employment in which he was injured. Upon this machine he worked daily until he was injured. The machine was a Hayes double-end tenoner, a standard machine, purchased by defendant in 1902, made of iron and steel throughout, about 8 feet long, and so constructed that in its operation it fashioned a tenon at each end of each board put through the machine. The only knives outside of the machine, extending beyond the dimensions of the frame of the machine, are called cope knives. They cut the sticking or molding at both ends and on both sides of the board. That is to say, there were two knives at each side of the machine, one

above and one below, secured to a shaft, and revolving horizontally.

When the plaintiff was injured, these sets of knives were about 23 inches apart and in plain sight. Plaintiff knew about them, knew how they worked, knew he would be injured if he touched them.

Boards intended to be treated by this machine are passed through it automatically by means of an endless chain which carries them to and beyond the knives and delivers them free at the other end of the table. To hold the boards firmly in position when they engage the knives, there are two pressure bars, one on each side of the machine. Once a board has become engaged with the chain and under the pressure bars, it cannot be removed or hurried until, by the movement of the chain, it is delivered free from the pressure bars, and a few inches beyond them, at the end of the table. Plaintiff's duty was to take the boards as they came from the machine, and, carrying them a short distance, pile them up on the floor. In doing his work, he would usually carry perhaps four or five boards, piling one upon the other as they came through the machine. The pressure bars are 18 inches apart, 2 inches in thickness, and 33 inches long, more than a foot high in the center, and 5 or 6 inches high at the ends. As has been indicated, the cope knives revolve outside of these bars. At plaintiff's end of the table, it was 6 inches from the point of the knives nearest to the plaintiff to the ends of the pressure bars nearest to the plaintiff. What is called the table at plaintiff's end of this machine was simply two iron bars, about 18 inches apart, on the same level as the rest of the machine. Upon these bars the automatic carrier deposited the boards as they came from the machine, and from this so-called table the plaintiff was expected to pick up the pieces and carry them to the piles. Measured parallel with the side of the table, it is 26 inches from the end of

it nearest to plaintiff to the knives. On each side of the machine, at the end where plaintiff worked, was a spindle, 6 inches beyond the end of the table and 15 inches away from the side of the machine. On each spindle were three pulleys and three belts; the two upper belts on each side running the cope knives. Where they pass around the pulleys, it is 24 inches, vertically, between the belts. As plaintiff stood at the end of the table, the belts revolved towards him and towards the knives. The space between these two sets of belts, in which space the plaintiff had to stand to do his work, was more than 3 and less than 4 feet. On the day plaintiff was injured, the material coming through the machine was 9 inches wide, 30½ inches long, and 1⅜ inches in thickness. It was plaintiff's habit to pile these boards one upon another, taking a number of them on each trip from the machine, getting back to the machine before other boards had come through and had fallen upon the floor. In taking up the pile of boards which he had built, it was his habit to take hold of the ends of the boards and, instead of backing out from between the belts which were running on each side of him, to turn himself to the left in coming away from the machine. Uniformly boys have been employed at this machine; none had ever before been injured.

As we understand the record, the situation, when plaintiff was injured, may be described substantially as follows: He stood in a space something more than 3 feet wide between revolving belts. He would have been obliged to extend his right hand and arm to nearly its full length to have put his right hand in the knives. He was picking up boards which were delivered to him at a point where the edge of the board farthest from him was about 6 inches from the knives. He had made a pile of boards on the table. Taking hold of the ends of the boards, he turned to carry them out. In a manner which he is unable to

describe, his right hand went into the knives, and he lost two fingers of his right hand. As he stood erect at the end of the machine, the upper belts, revolving towards him and towards the knives, were about on a level with his shoulders; the space between the belts narrowing as it approached the knives. Aiding the description of the place and manner of the plaintiff's employment, the trial court and this court had, among other things, pictures of the machine. While it appears that the work plaintiff had to do can be safely performed and had been theretofore safely performed, we are not satisfied that the employment was not hazardous, within the meaning of the statute. A slight movement of the body towards the moving belts was likely to result in harm to the employee. If there was contact of a rapidly moving belt with the arm or the hand of an employee, the consequences might be disastrous. If, as is probable, the plaintiff was injured because, in turning with his pile of boards, his right arm or hand was struck by a belt, it is not difficult to understand how his hand may have been, and probably was, instantly carried to the knives.

Whether, in view of all the conditions, including the age of the plaintiff, he was as careful as he should have been was also a question for the jury. And they might well have found, considering the space between the moving belts and the fact that plaintiff was injured as he was, although he is unable to describe how it happened, that his freedom from negligent conduct was established. His testimony amounts to this: That he was not conscious of any careless act or movement, did not put his hand in the knives, and cannot tell how it was carried to the knives. We think counsel is not warranted in saying that neither plaintiff nor any one else knew or would tell how the accident occurred, and that there was "no explanation of how this injury was caused." Assuming that plaintiff told the truth, the explanation approaches

closely to a demonstration. His hands were occupied with the boards, one hand at each end of them. As he lifted them, his right hand, or arm, struck the rapidly moving belt which moved close to his body and, at an angle, towards him and towards the knives. No one can read the record and examine the picture of the machine without being fairly convinced that in this manner, from this cause, the injury was received.

The court declined to instruct the jury, as requested by defendant, that no duty devolved upon defendant to further guard the knives upon the machine. It has been stated that plaintiff did not rely for a recovery upon a failure to further guard the knives. The court correctly directed and limited the attention of the jury to the negligence relied upon, and said nothing in the charge upon the subject of guards for the knives, except, and we think properly, that all conditions existing there were to be considered in determining whether plaintiff's employment was or was not hazardous.

It is complained that the court, in instructing the jury, used language which, when contrasted with the plaintiff's claim, was misleading and prejudicial to defendant. The language employed was:

"The defendant maintains and claims that it in all things provided the plaintiff with a safe place to work, and that the surroundings were in no way hazardous, and that all the various machines which were in use in and around the location of the employment or in any manner connected with his labor on that occasion were safe and in no wise hazardous to the welfare, life, or limb of the plaintiff; but that the injury sustained was the result of the gross recklessness and carelessness of the plaintiff himself; that only by carelessness could he have sustained the injury of which he complains, one affirming and one denying."

It is said that this amounted to a statement that it was necessary for the jury, to acquit defendant, .to

find that it had established that there was absolutely no chance for injury anywhere in the locality in which plaintiff was employed, and that his recovery was not barred unless he was grossly reckless and careless. If this portion of the charge was alone to be considered, its propriety might well be challenged. But it does not stand alone. The court also said to the jury:

"I charge you that, within the meaning of the statute, a hazardous employment is one that is fraught with or exposed to hazard, peril, danger, or risk, in the ordinary course of conduct, and does not mean that the employment is hazardous because of the possibility of accident resulting from the ordinary operation of the machine or knives, or from a careless or negligent conduct of such employment.

"I charge you that, before you can find the defendant liable in this case, the plaintiff must satisfy you by the preponderance of the evidence that, in addition to proving that he himself was free from fault, he must also show to you that the employment at which he was engaged was hazardous; that is, exposed to hazard, peril, or danger greater than the ordinary danger in the ordinary vocations of life.

"I further charge you that the law under which this action is brought does not contemplate that capable, experienced young men above the age of 15 years, and under the age of 18 years, shall not be employed to operate or work near machinery; it simply contemplates that they shall not be employed in an employment that is hazardous, within the meaning of the statute, as defined by me. Under the undisputed evidence in the case, plaintiff was employed in taking away boards from the tail end of what is known as a double tenoner machine, upon which were placed knives in certain positions, as have been shown to you, and upon which it is claimed, and I think admitted, he was injured. But in considering this you should take into account the character of the work which he was employed to do, the place in which he was employed to work, the character of the machinery which he was employed to work adjacent to, and the location of its parts, the knives and belts, and guards

that have been shown to you which it is claimed protected the knives, and say from the evidence in the case, and from all the surroundings, and all the conditions, was the employment of the plaintiff of such character as to be hazardous employment, under the definition which I have given you.

"On the question of contributory negligence, I will also say to you, if you find that the injury plaintiff received was caused as a result of the negligence of the defendant in hiring him when under the age of 18 years, and setting him at work at a hazardous employment, as I have defined it to you, still you cannot return a verdict in his favor if you find that he was guilty of any negligence which contributed to his injury. In other words, if he has failed to establish that he did nothing to contribute to the injury, then he cannot recover. The fact that the plaintiff had an accident whereby he was injured is not evidence that the employment at which he was injured was hazardous. I instruct you that accidents may happen on all kinds of machinery, and in nearly every vocation of life, and that the fact that such an accident has happened to the plaintiff is not conclusive evidence that the carrying away of the boards from the machine upon which the plaintiff was injured, in the manner that has been described to you, is a hazardous employment. The simple fact that an accident has happened to the plaintiff, who is a young man under the age of 18 years, does not make the defendant liable. And, if the young man received his injury as a result of an unavoidable accident plaintiff cannot recover, and the defendant is not liable.

"If you find that the plaintiff, while engaged in carrying boards from the machine to the piling place, as has been described before you, and performing his duty as has been set forth to you here, did not exercise proper caution and observation, such as an ordinarily prudent person of like years and experience and understanding of the plaintiff would and should have exercised, as the circumstances required, and you further find from the testimony that an ordinarily prudent person under like circumstances, of the age, experience, and intelligence of the plaintiff, under such circumstances would have guarded himself against injury from the knife upon which plaintiff

was injured, and would have remained in a place of safety without especial care and attention, then it was the duty of the plaintiff to have done so, and the failure on his part to take such precaution would prevent his recovery.

"The burden of proving the issue in this case is upon the plantiff; that is, he must sustain and support every charge made by him by the fair preponderance of the evidence in the case. By the preponderance of evidence is meant, as I have stated, not that the greater number of witnesses must be produced, but only that the facts shall appear by the greater weight of the testimony submitted to you, as may seem to you most worthy of credit, under all the conditions and circumstances of the case. By the preponderance of evidence is really meant that it is more satisfactory and is more convincing to your minds on a given proposition than the opposite position taken.

"If you should find, therefore, after a careful consideration of this case, that the evidence is equally balanced, then you should find for the defendant, because it must preponderate in favor of the plaintiff before he can recover, and that as I have stated, upon every branch of the case and every issue.

"I charge you that the fact that the belt running on the pulleys coming out in close proximity to where the boy stood, and on each side of him, cannot be considered by you as evidence of any negligence upon the part of the defendant in this case for which the plaintiff would be entitled to recover, unless the same caused or contributed to the injury, or on account of the near proximity of said belts, unless you find the belts constituted an element of danger, and in their location and the conditions surrounding them contributed to the injury complained of, and otherwise should not be considered in any way by you as establishing liability against the defendant in this case.

"To make it clear to you, gentlemen, the mere fact that he employed this boy would in no way reflect upon the defendant, unless he put him at work in the manner as charged, where it was hazardous and dangerous. I charge you that the fact of the happening of this accident is no evidence that can be considered by you as showing or tending to show that the defendant in this case had put this plaintiff at any hazardous

employment, and that the happening of such accident is no evidence that the employment of the plaintiff by the defendant was a hazardous employment. That condition, standing alone, would not be any evidence which you should consider, but I instruct you that you may consider the fact of his injury there, in the manner in which it has been explained to you, as one element which you may take into consideration in determining whether the defendant was negligent in that employment.

"That you have no right to find a verdict in this case based upon conjecture, and not supported by the evidence in the case, and that the plaintiff in this case has no right to recover unless you are able to determine from the evidence just how the accident occurred, and that at the time of the happening of the accident the plaintiff himself was free from any fault or neglect upon his part which contributed to the injury which he received, and that, unless you so find, your verdict must be for the defendant of no cause of action."

We do not believe the jury misunderstood the issues submitted, and it is clear that in some particulars the charge was extremely favorable to defendant.

We do not find reversible error made out, and therefore affirm the judgment.

McALVAY, C. J., and BROOKE, KUHN, BIRD, MOORE, and STEERE, JJ., concurred. STONE, J., did not sit.